*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SOULLIERE LAND,

UNPUBLISHED
July 11, 2025
9:25 AM

Petitioner-Appellant,

v

No. 358638
Tax Tribunal

TOWNSHIP OF MACOMB,

LC No. 19-002606

Respondent-Appellee.

Before: O' BRIEN, P.J., and M. J. KELLY and KOROBKIN , JJ.

PER CURIAM.

Petitioner appeals by delayed leave the Michigan Tax Tribunal's judgment determining the true cash value (TCV) and taxable value (TV) of petitioner's property in Macomb Township for the 2019 tax year. We affirm in part, reverse in part, and remand for further findings of fact.

## I. BASIC FACTS

The subject property is a 27-hole public golf course. Petitioner, the owner of the property, contends that its highest and best use is continued use as a golf course. Petitioner's appraisal expert, Michael Rende, determined the value of the property using the capitalization-of-income approach. He concluded that the TCV was $175,000. He also conducted a sales-comparison analysis, using sales of other golf courses from 2015 to 2018. Under that method, he concluded that the value was $195,000. Although the property is zoned for residential use, petitioner argues that the property cannot be feasibly redeveloped for residential use because a substantial portion of the property is encumbered by a 100-year floodplain. Additionally, the property is partly zoned R-1S, or "residential suburban," which requires a minimum lot size of 30,000 square feet. Petitioner argues that the Macomb Township housing market does not support a demand for that size of lot.

The township assessor, Daniel Hickey, determined that the highest and best use of the property was as vacant land for residential development. He acknowledged that the floodplain would preclude development on a portion of the property, but opined that the encumbered portion could be used as park land. He assumed that the R-1S zoning designation could be changed to R-1, which would allow a smaller lot size. Hickey conducted a sales-comparison analysis using large

-1-

parcels of vacant land purchased by residential developers. He concluded that the TCV was $3,125,000.

Following a three-day evidentiary hearing, the tribunal agreed with respondent that a golf course was not the "maximally profitable" use of the property. The tribunal did not critique Rende's capitalization-of-income calculations. However, it concluded that Rende's value of $175,000 did not—and could not—reflect the TCV of the property because it resulted in a per-acre value that was significantly lower than the per-acre value of the properties in both parties' sales-comparison studies. The tribunal also found that Hickey's sales-comparison analysis was unreliable because he had not adequately adjusted the comparison properties' values to account for dissimilarities between the property and the sales-comparison properties. The tribunal further found that Hickey had made unjustified assumptions about future development, such as the assumptions regarding rezoning and dividing the parcel between residential and park land use. Having rejected portions of both petitioner and respondent's experts valuation analysis, the tribunal concluded that the highest and best use of the property was to be held as vacant land for future development opportunities. The tribunal found that the TCV was $2,000,000, the state equalized value was $1,000,000, and the TV was $836,403. This appeal by delayed leave follows.

## II. PROPERTY VALUATION

### A. STANDARD OF REVIEW

"[T]his Court's review of decisions of the Tax Tribunal, in the absence of fraud, is limited to determining whether the tribunal made an error of law or adopted a wrong principle; the factual findings of the tribunal are final, provided that they are supported by competent and substantial evidence." *President Inn Props, LLC v Grand Rapids*, 291 Mich App 625, 631; 806 NW2d 342 (2011) (quotation marks and citation omitted). "Substantial evidence is the amount of evidence that a reasonable person would accept as being sufficient to support a conclusion; it may be substantially less than a preponderance of the evidence." *Wayne Co v Mich State Tax Comm*, 261 Mich App 174, 186-187; 682 NW2d 100 (2004).

### B. HIGHEST AND BEST USE

"In a property tax dispute, the petitioner must prove by the greater weight of the evidence that the disputed assessment was too high on the basis of the Tax Tribunal's findings of true cash value." *Forest Hills Coop v Ann Arbor*, 305 Mich App 572, 588; 854 NW2d 172 (2014). TCV and fair market value (FMV) are synonymous. *Huron Ridge LP v Ypsilanti Twp*, 275 Mich App 23, 28; 737 NW2d 187 (2007). FMV "refers to the probable price that a willing buyer and a willing seller would arrive at through arm's length negotiation." *Detroit Lions, Inc v Dearborn*, 302 Mich App 676, 697; 840 NW2d 168 (2013) (quotation marks and citation omitted). The three most common approaches to determining property value are the capitalization-of-income approach, the sales-comparison approach, and the cost-less-depreciation approach. *President Inn Props,* 291 Mich App at 639. "The Tax Tribunal is under a duty to apply its expertise to the facts of a case in order to determine the appropriate method of arriving at the true cash value of property, utilizing an approach that provides the most accurate valuation under the circumstances." *Menard, Inc v City of Escanaba*, 315 Mich App 512, 521-522; 891 NW2d 1 (2016) (quotation marks and citation omitted). "The Tax Tribunal is not bound to accept the parties' theories of valuation." *Great*

*Lakes Div of Nat'l Steel Corp v City of Ecorse*, 227 Mich App 379, 389-390; 576 NW2d 667 (1998). "It may accept one theory and reject the other, it may reject both theories, or it may utilize a combination of both in arriving at its determination of true cash value." *Id.* at 390.

"To determine true cash value, *the property must be assessed at its highest and best use*." *Menard*, 315 Mich App at 522 (quotation marks and citation omitted). "Highest and best use is defined as the most profitable and advantageous use the owner may make of the property even if the property is presently used for a different purpose or is vacant, so long as there is a market demand for such use." *Id.* (quotation marks and citation omitted). The tribunal must determine the property's highest and best use. *Id.* "A highest and best use determination requires simply that the use be legally permissible, financially feasible, maximally productive, and physically possible." *Detroit Lions*, 302 Mich App at 697.

The tribunal determined that Hickey's sales-comparison analysis was unreliable because (1) he did not give sufficient weight to the property's floodplain problem and erroneously found that residential development was financially feasible and (2) his adjustments for distinctions between the property and the properties in his sales-comparison analysis were arbitrary and unquantifiable. Additionally, the tribunal noted that Hickey had assumed without a factual basis that the R-1S section of the property could be rezoned to R-1 and that the property could be split between a residential subdivision and park land. The tribunal found the conclusion that residential development was the property's highest and best use is not credible in light of Hickey's assumptions and his failure to account for "potentially expensive variables" related to residential development. However, despite the tribunal's criticism of Hickey's analysis, the tribunal found that his per-acre value finding was a useful benchmark for judging the reliability of Rende's sales-comparison analysis. The tribunal determined "that the raw land values from the vacant land sales submitted by Respondent become the only reliable evidence when qualitative adjustments are applied."

As it relates to Rende's valuation, the tribunal found that Rende erred by concluding that the property's highest and best use was as a golf course. If Rende's comparable-sale analysis yielded an unrealistically low value, then his income value, which was in line with the comparable-sale value, likewise could not represent the most profitable use of the property. The tribunal remarked that petitioner's per-acre values were significantly lower than the values of the golf courses Rende used for comparison, indicating that Rende's valuation was not in alignment with the data from his own comparable sales analysis. Rende composed a chart of comparable sales data that listed the price per hole instead of price per acre. When this data is converted to per-acre value, the per-acre values range from $3,722.63 to $9,929. In comparison, petitioner's per-acre value calculations came to $1,411.29 under the income-approach analysis value or $1,572.58 under the comparable-sales analysis.

The tribunal rejected both parties' conclusions regarding highest and best use and came up with a middle position, that the property would be most profitably held "as vacant land but not necessarily for immediate residential development." The tribunal noted that "holding [the property] as vacant allows for the consideration of various uses, including park land, residential development once the entitlements are in place, and [that there would be] continued use as a public daily fee golf course while other uses are explored and/or entitlements are granted." The evidence supported a finding that use as a golf course has declining value, but use for residential

development would require planning that, on the date of valuation, involved delays and uncertainties. As found by the tribunal, Hickey's valuation was too high because he made unrealistic assumptions regarding such planning, but Rende's valuation also was unrealistic and inconsistent with present conditions in the township. Moreover, the tribunal's finding is consistent with Rende's expert opinion that the highest and best use of the property, considered as vacant, was to be held for future development. On this record, the tribunal's finding is supported by substantial evidence. See *Wayne Co*, 261 Mich App at 186-187.

Petitioner cites a treatise, *The Appraisal of Real Estate*, 15th edition, in support of its assertion that the sales-comparison approach is generally not suitable "for properties that are purchased primarily for their income-producing characteristics." This treatise states that "[b]uyers of income-producing properties usually concentrate on a property's economic characteristics and typically put more emphasis on the conclusions of the income capitalization approach." Appraisal Institute, *The Appraisal of Real Estate*, (15th ed, 2023) 354.[1] However, the term "usually" qualifies this statement, indicating that some circumstances will call for the sales-comparison approach for appraising property that is currently used for the generation of income. Further, in *President Inn Props*, 291 Mich App at 638, this Court rejected the petitioner's argument that the income-capitalization method was the only acceptable method for determining the value of income-producing property. In the instant case, respondent offered evidence that the property's income potential has declined, making the property more attractive to prospective buyers for its redevelopment potential. In view of this evidence, the tribunal did not err by relying on the sales-comparison approach.

## C. FINANCIAL FEASIBILITY

Petitioner next contends that the tribunal's analysis omits the required findings of financial feasibility and maximal productivity. We disagree.

The tribunal found that respondent failed to adequately address how the floodplain encroachment affected the financial feasibility of respondent's highest-and-best-use analysis. Respondent's omission of this information led the tribunal to conclude that respondent "failed to fully develop a highest and best use analysis in concluding that vacant for residential development was the highest and best use for the subject property." The tribunal noted that "holding [the property] as vacant allows for the consideration of various uses, including park land, residential development once the entitlements are in place, and [that there would be] continued use as a public daily fee golf course while other uses are explored and/or entitlements are granted."

Although the tribunal did not make an explicit statement regarding financial feasibility and maximal productivity, such findings are implicit from the tribunal's conclusions that respondent failed to prove financial feasibility for residential development and that petitioner failed to prove that the golf course was the most profitable use. The tribunal determined that continued use as a golf course was financially feasible because the golf course operated at a modest profit, but held that the property as vacant for unspecified future development would have greater value. The

---

[1]https://archive.org/details/the-appraisal-of-real-estate-15th-edition-appraisal-institute-z-library/page/n365/mode/2up?q=capitalization (accessed June 12, 2025).

tribunal found that a developer would not pay respondent's proposed value of $3,125,000 for the property as vacant for a combination of residential development and park land because the floodplain and zoning would make the purchase too risky for the price. However, a developer would plausibly buy the property at a lower price and hold it for future development opportunities, possibly while continuing to operate the golf course until such opportunities emerged.

Indeed, Rende testified that "the only way to mitigate that risk of [buying without necessary entitlements for residential develop] and render this financially feasible is to buy it as an operating golf course and continue to operate it while you are pursuing these entitlements." Rende was skeptical that a developer would be interested in purchasing under these circumstances, but he acknowledged the possibility. Thus, the tribunal's finding that it would be more feasible to purchase the property with plans for some type of development was supported by substantial evidence. *President Inn Props*, 291 Mich App at 630-631.

## D. REASONABLE PROBABILITY OF VACANCY

Petitioner also asserts that the tribunal's finding that holding the property as vacant for future development was erroneous because the tribunal did not also make findings as to the probability of the property becoming vacant in the near future. Petitioner relies on *Detroit/Wayne Co Stadium Authority v Drinkwater, Taylor, & Merrill, Inc*, 267 Mich App 625; 705 NW2d 549 (2005). However, the tribunal's finding of highest and best use contemplated that the property could continue to function as a golf course while exploring opportunities for redevelopment. The tribunal did not assume that the property would be or should be immediately made vacant. Petitioner's argument therefore is without merit.

## E. TRIBUNAL'S ADJUSTMENT OF RAW DATA

Finally, petitioner argues that the tribunal failed to make adequate findings of fact on the record to explain how it adjusted the raw data to arrive at its conclusion regarding the property's TCV. We agree.

The tribunal found that respondent's "raw land values from the vacant land sales" were "the only reliable evidence when qualitative adjustments are applied." The tribunal excluded the park land and the two oldest vacant land sales, leaving a range of $15,714 to $41,846, "which would result in a TCV for the property of $2,013,749 to $5,195,181."[2] The tribunal made no findings of fact with respect to how it adjusted the raw data to reach the TCV. Rather, it simply stated that it was "necessary to make these qualitative adjustments" because respondent's "adjustments were not supported by any objective, verifiable data and were largely simple estimates described." The tribunal's failure to explain the reason why it chose a value of $2,000,000 from the raw data range falls short of the requirement in MCL 24.285 to include "a

---

[2] We are uncertain as to how the tribunal determined the low end of this range. The lowest per-acre value in respondent's comparable sales property analysis was $15,714 which, when multiplied by the property's 124.15 acres, results in a product of $1,950,893.10.

concise and explicit statement of the underlying facts supporting" the tribunal's finding. Accordingly, remand for further factual findings related to the property's TCV is required.[3]

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs are awarded. MCR 7.219(A).

/s/ Colleen A. O'Brien
/s/ Michael J. Kelly
/s/ Daniel S. Korobkin

---

[3] Respondent suggests that the tribunal's TCV finding should be upheld because it is within the range of valuations in evidence. See *President Inn Props*, 291 Mich App at 641 (finding "no clear error by the factfinder when it determines that the value of the property lies within the range of values as testified to by experts."). Here, however, the tribunal's decision was based upon "raw data" that the tribunal deemed unreliable without "adjustments." It then made its own adjustment, but did not explain what evidence on the record supported the adjustment that it made.